## POPE *v.* WIGGINS.

Feb. 1, 1954

No. 39225 51 Adv. S. 79 69 So. 2d 913

*John T. Smith, W. E. O'Hara,* Cleveland, for appellant.

*John E. Stone,* Asst. Atty. Gen., Jackson, for appellee.

McGehee, C. J.

This is a habeas corpus proceeding wherein the appellant, Nora (Noah) Pope, alleges that he is being illegally deprived of his liberty by the appellee Marvin Wiggins, Superintendent of the Mississippi State Penitentiary, for the reason that he was granted an indefinite suspension of a life sentence for murder, "pending good behavior, and on condition that it may be revoked without notice for any reason deemed sufficient to the governor," and that the same was revoked in violation of due process of law, because he was given no notice and opportunity to be heard, even though the order of suspension did not so require, but contained the further recital that: "By accepting this suspension of sentence the said Noah Pope agrees to the conditions hereof * * *."

The petitioner was convicted of murder in Leflore County and sentenced to life imprisonment in November 1927, and was granted the indefinite suspension of sentence on October 14, 1946, by Governor Thomas L. Bailey upon the condition hereinbefore quoted. On May 1, 1950, the then Governor, Fielding L. Wright, revoked the sus-

pended sentence, and the revocation stated on its face the reason therefor as being that the "said Noah (Nora) Pope has been indicted by the Bolivar County grand jury for murder. Revocation of suspension is recommended by numerous officers and citizens of Bolivar County."

There is exhibited to the answer to the writ of habeas corpus a copy of the judgment of conviction of the petitioner for murder in Leflore County, showing that he was sentenced to remain in the state penitentiary for and during his natural life; also a copy of the order of Governor Thomas L. Bailey of October 14, 1946, granting the indefinite suspension of the sentence upon the conditions hereinbefore quoted; also the order of Governor Fielding L. Wright of May 1, 1950, revoking the suspension of the sentence for the reasons therein stated and hereinbefore quoted; and a copy of a former suspension of sentence by Governor Thomas L. Bailey bearing date of February 20, 1945, which contained the same provisions that were contained in the suspension of sentence of October 14, 1946, here under consideration.

The habeas corpus hearing was on an agreed statement of facts which stipulates that the exhibits hereinbefore referred to were to be considered as being in evidence at the habeas corpus hearing without formal introduction thereof into the record. The agreed statement of facts further stipulates that the suspended sentence of the petitioner was revoked by Governor Fielding L. Wright on May 1, 1950, without prior notification to the petitioner, and that the petitioner was not given a hearing before the Governor, either before or after revocation of suspended sentence; and that the petitioner is now incarcerated in the Mississippi State Penitentiary at Parchman, Mississippi, and is "being held there by defendant (Marvin Wiggins, Superintendent of the Mississippi State Penitentiary) under the terms of his conviction in the Circuit Court of Leflore County, Mississippi, at the November 1927 term thereof."

The petitioner offered no testimony or other evidence *aliunde* the agreed statement of facts and the exhibits to the answer hereinbefore referred to which were agreed to be in evidence as stated without formal introduction thereof. In other words, the petitioner offered no proof to show that his behavior had been good between the date of the second suspension of his sentence by Governor Thomas L. Bailey and the subsequent revocation thereof by Governor Fielding L. Wright, nor to show that Governor Fielding L. Wright did not have any reason which he was entitled to deem sufficient to justify the revocation of the suspended sentence. The suspension of sentence granted on October 14, 1946, does recite however that the offender was then out of the penitentiary on "suspension since August 18, 1945, and that the reports from the welfare department to the Governor as to his behavior, between the date of August 18, 1945, and October 14, 1946, indicated that he had been rehabilitated." But, as heretofore stated, no proof was offered as to whether he had complied with the terms of his suspended sentence, granted him on October 14, 1946, up to the time of the revocation thereof on May 1, 1950, nor to show that the then governor did not have any reason that could have been deemed sufficient to him to warrant the revocation.

 The burden of proof was upon the petitioner at the habeas corpus hearing to show that his behavior subsequent to the granting of his indefinite suspension of sentence on October 14, 1946, and until May 1, 1950, had been good, and that therefore the Governor had no reason that should have been deemed sufficient by him to justify a revocation of the suspension on May 1, 1950, assuming for the sake of argument, and for that purpose alone, that the petitioner herein would otherwise have been entitled to successfully challenge the authority of the then Governor to revoke his suspension of sentence without notice and a hearing.

Under Section 124 of the Constitution of 1890, the power to grant pardons and to otherwise extend clemency, after the judicial process whereby one has been convicted of crime has come to an end, is vested in the governor alone. That portion of this constitutional provision which is pertinent to the issue before us reads: "In all criminal and penal cases * * *, the Governor shall have power to grant reprieves and pardons, to remit fines, * * *." This power is not limited by any other provision of the State Constitution, nor can the same be limited or restricted by either of the other two principal departments of the state government in the absence of a constitutional amendment so authorizing.

There is no express provision in the Constitution dealing with the right of the governor to grant suspensions of sentence upon conditions which he may see fit to prescribe as to when the suspension of a sentence may be terminated. However, his right to grant such suspensions is not challenged in this proceeding, and it may be said in passing that since there is no limitation or restriction contained in the Constitution that would preclude the governor from granting suspended sentences on conditions that may be both advisable and expedient in his opinion as to the proper exercise of executive clemency, and since the Legislature by Section 2543 of the Code of 1942 has sought to prescribe the conditions for the exercise of such right by him in providing that: "Whenever any court granting a suspended sentence, or the *governor* granting a pardon, *based on conditions* which the offender has violated or failed to observe, *shall be convinced by proper showing*, of such violation of sentence or pardon, then the *governor or the judge* of the court granting such suspension of sentence in vacation or in court time, as the case may be, shall be authorized to annul and vacate such suspended sentence or conditional pardon; and such convicted offender shall thereafter be subject to arrest and court sentence service, as

if no suspended sentence, or conditional pardon, had been granted, and for the full term of the original sentence that has not been served; and shall be subject, after such action by the court or the *governor,* to arrest and return to the proper authorities as in the case with an ordinary escaped prisoner,'' (emphasis supplied), we must assume that the right of the governor to grant a suspended sentence on conditions is not to be questioned.

The constitutionality of this statute, at least insofar as it affected the power of a court to grant suspended sentences and to revoke them on a proper showing, was upheld in the case of Gabriel v. Brame, Sheriff, 200 Miss. 767, 28 So. 2d 581, but the exercise of executive clemency and any statutory limitations thereon was not there involved. The statute as written is confusing insofar as the governor is concerned, since the clause as to what may be done ''in vacation or in court time, as the case may be'' is inapplicable to his office. But the statute is effectual to regulate the right of any court, which has the power to impose sentences upon one convicted of crime, to suspend a sentence and thereafter to revoke such suspension upon the proper showing that the suspension should be revoked. And we held in the case of Mason v. Cochran, Sheriff, 209 Miss. 163, 46 So. 2d 106, that the trial judge was without authority to revoke a suspended sentence granted by him, except upon notice to and opportunity afforded the offender to be heard in regard to the proposed action. In that case the judicial process was still in operation, and the offender was entitled to be present at every stage of the proceeding until the judicial process was completed and until the jurisdiction of the trial court had ended.

In the granting of a hearing, after notice to the offender, where both the prosecution and the defense would be entitled to introduce proof as to the good behavior, the court would be exercising purely a judicial function. But neither the judicial nor the legislative departments

of the state are empowered to impose upon the chief executive the duty to perform judicial functions in the conduct of regular hearings in his office, even though in the exercise of his constitutional power of granting executive clemency there may be involved judgment and discretion in determining when he may be justified in revoking a suspended sentence, "for any reason deemed sufficient to the governor." He is the judge of the sufficiency of the information, from whatever source, in determining whether he has a reason that he is entitled to deem sufficient for his action. In other words, we do not think that the case of Mason v. Cochran, Sheriff, is controlling in the instant case, as contended for by the petitioner.

Likewise in the case of Cooper v. State, 175 Miss. 718, 168 So. 53, relied upon by the petitioner as authority to sustain his contention as to his alleged right to be granted his liberty in habeas corpus, dealt entirely with the right of a judge to revoke a suspended sentence, and it was there held that if after a public hearing upon reasonable notice it was found by the judge that the evidence was sufficient to convince a reasonable person that the conditions of the suspension had been broken, he is entitled to revoke a suspension, and that the convict had no recourse except to serve the sentence and pay the fine insofar as the same had theretofore been suspended; and that in any event he has no recourse by way of appeal. It was there forecast that if a *judge* should undertake to revoke a suspension without notice to the convict and an opportunity to be publicly heard, the Supreme Court might not hold that the convict would be without remedy. This Court expressly so held later in the case of Mason v. Cochran, Sheriff, supra, wherein the case of State v. Zolantakis, 70 Utah 296, 259 P. 1044, 54 A. L. R. 1463, was cited and quoted from to sustain the proposition that due process of law required that *in the exercise of judicial process* a suspended sentence could not be revoked

by a trial judge without notice and an opportunity to be heard.

The cases of People ex rel. Joyce v. Strassheim, 242 Ill. 359, 90 N. E. 118, and People ex rel. Stumpf v. Craig, 79 Misc. 98, 140 N. Y. Supp. 652, and State v. Renew, 136 S. C. 302, 132 S. E. 613, 65 A. L. R. 1464, all dealt with the right of a trial court to revoke a sentence as a part of the judicial process in connection with the prosecution, conviction, and punishment of the offender by the judgment of the court wherein the suspension was granted and later revoked.

It is true that in the case of Jamison v. Flanner, 116 Kan. 624, 35 A. L. R. 973, 228 P. 82, the Court responded to the argument that the pardoning power is an executive power to be exercised by the governor in his discretion, and that no other official or department of the government can interfere with it, and said that this is only true when made so by the Constitution, and then proceeded to say that: "We think it clear that under the Constitution of this state the Legislature may restrict and regulate the pardoning power of the governor, and that any pardon issued by him, when the restrictions and regulations provided by law have not been complied with, is issued without authority, and is void; and that the question whether the pardon has been issued in accordance with the restrictions and regulations provided by law may be inquired into by the court, in any cause or proceeding in which it is called to the court's attention." This case is not applicable to the question now before us, since there is no provision in our Constitution that authorizes the Legislature to restrict and regulate the pardoning power of the governor. The case of Montgomery, et al. v. Cleveland, 134 Miss. 132, 98 So. 111, 32 A. L. R. 1151, cited in the Jamison case, supra, deals only with the right of a lieutenant-governor to grant a pardon when the governor is absent from the state, and therefore has no

bearing on the issue presented by the petitioner, Nora Pope, on this appeal.

The views expressed by the United States Circuit Court of Appeals for the Sixth Circuit, as reported in the case of Fleenor v. Hammond, Superintendent of Kentucky State Reformatory, 116 F. 2d 982, 132 A. L. R. 1241, all tend to strongly support in many material particulars the contention of the petitioner on the present appeal, but the opinion recognized the rule allowed in many state jurisdictions to the effect that the power given to the executive by the constitution of a state to grant a pardon, includes the right to annex conditions precedent or subsequent that are not illegal, immoral or impossible of performance, and also that there is a generally recognized rule that the executive may insert in the pardon an express reservation of a right of summary revocation without notice to the person affected, though in the absence of this reservation the holder of the pardon is entitled to a judicial determination of the question whether the conditions of the pardon have been violated, before it can be effectually revoked.

The Circuit Court of Appeals held, however, that where the power of the governor to revoke a conditional pardon, "chal'enged by unequivocal allegations that the petitioner has complied with the conditions of the grant" he is not entitled to a trial in court, or a trial in any strict or formal sense, but the Court said that "due process is satisfied if reasonable opportunity is extended to Fleenor to explain away the accusations that he has violated the conditions upon which his pardon was granted." The Court therefore set aside the order which dismissed the petition for a writ of habeas corpus and remanded the case to the District Court with "instructions to permit the petitioner to amend his petition, if he is able to do so, to allege unequivocally that if granted a hearing he could demonstrate thereat that the condi-

tions of pardon have been fully complied with and that none of them have been breached.''

But under our procedure the right to amend a petition or other pleading after appeal to this Court, exists only in certain instances; as for instance, where a demurrer has been sustained thereto, and the action of the trial court is affirmed in that behalf, and the cause is remanded. Here the petition for the writ of habeas corpus made, in substance, the proper allegations, but when considered with the exhibits thereto and the answer to the same, there rested upon the petitioner the burden of showing by sufficient proof at the habeas corpus hearing that he had in fact complied with the conditions set forth in the order of suspension, and that therefore there existed no reason, that the governor was entitled to deem sufficient, to warrant him in revoking the suspension of sentence. He offered no proof to sustain the allegations of his petition as to compliance with the conditions of the order of suspension, nor to show that the governor was not fully warranted in revoking the same.

The decision in the Fleenor case was not followed in the following cases: Ex Parte Paquette, Supreme Court of Vermont, 27 A. 2d 131; Ex Parte Dearo, California, 214 P. 2d 581; Ex Parte Anderson, Oregon, 229 P. 2d 633, 645, 191 Ore. 409, 230 P. 2d 770, 29 A. L. R. 2d 1051.

Moreover, it was held in the case of Muckle v. Clarke, (Ga.), 12 S. E. 2d 339, that ''It seems that where a pardon is unconditional and is duly delivered and accepted, it is not subject to revocation. * * * A pardon, however, is a mere act of grace, to which the pardoning power may attach any condition precedent or subsequent which is not illegal, immoral, and impossible of performance; and when a convict accepts such conditional pardon, he is bound by all of its valid provisions * * *.'' The Court further said in that case that: ''A condition in a pardon that the governor may summarily determine whether the conditions have been complied with, and if

he finds that they have not, may revoke the pardon and order the reconfinement of the offender is binding upon the convict, and authorizes his re-arrest and commitment upon the terms and in the manner imposed. 29 R. C. L. 573, Sec. 61. So, under the express terms of the pardon here in question, the applicant was not entitled to notice or hearing as a condition precedent to revocation.''

In Ex Parte Woodward, Crim. Court of Appeals, Oklahoma 1936, 58 Okla. Crim. Rep. 333, 53 P. 2d 288, the court said: ''The contention here made is not new. This court in Ex Parte Horine, 11 Okla. Cr. 517, 825, L. R. A. 1915F, 548, in syllabus 1 and 3 held:

'' '1. The governor of the state has the power to annex to a pardon or parole any condition precedent or subsequent, provided it is not illegal, immoral, or impossible to be performed.'

'' '3. A convict was granted and accepted a parole which expressly provided that the governor might revoke the same and remand the party to prison for a violation of the conditions, or ''for any other reason by him deemed sufficient.'' Held, that the governor may order the convict to be so remanded without notice to him, and without giving him an opportunity to be heard.' ''

In Arthur v. Craig, 48 Iowa 264, 30 Am. Rep. 395, it was said: ''In Vol. 4, p. 401 of Blackstone's Commentaries, it is said: 'A pardon may also be conditional; that is, the king may extend his mercy upon what terms he pleases, and may annex to his bounty a condition, either subsequent or precedent, on the performance whereof the validity of the pardon will depend; and this is by the common law.' This rule has been followed by adjudications in England, and has been so generally adopted by the courts of this country, under constitutions providing an unrestricted pardoning power, that the law must now be regarded as settled that the executive may annex to a pardon any condition, precedent or subsequent, pro-

vided it be not illegal, immoral or impossible to be performed.''

 Since Governor Thomas L. Bailey in granting the indefinite suspension of sentence to the petitioner herein saw fit to impose the condition that ''it may be revoked without notice for any reason deemed sufficient to the governor,'' and he may not have been willing to grant the suspension otherwise, and since this order of suspension was accepted by the petitioner and his acceptance thereof expressly provided: ''By accepting this suspension of sentence the said Noah Pope agrees to the conditions hereof, and hereby agrees that the same may be revoked without notice, and for any reason deemed sufficient to the governor'' we are of the opinion that he is bound by the terms and conditions thereof, and that he had the legal right to waive notice and leave it to the governor as a matter of future determination to say whether any reason existed that was entitled to be deemed sufficient to the governor for a revocation thereof; and that when he was indicted by the Bolivar County grand jury for another alleged murder, and the revocation of his suspended sentence was recommended by numerous officials and citizens of Bolivar County, the then governor, Fielding L. Wright, was entitled to determine whether the subsequent indictment and recommendation of numerous officials and citizens of Bolivar County that the suspension of sentence of October 14, 1946, be revoked was a reason that the then governor was entitled to deem sufficient therefor. But even though it were to be conceded that he is entitled to complain at a habeas corpus hearing that he was not given the notice which he expressly waived in accepting the suspension of sentence, and was entitled to show that his behavior had been good between October 14, 1946, and May 1, 1950, and that there existed on the latter date no reason which the then governor was entitled to deem sufficient to justify the revocation, he nevertheless wholly failed to make

any proof in that behalf, and the action of the trial court in denying the petition for the writ of habeas corpus and in refusing to restore unto the petitioner his freedom cannot be held to have been error. The judgment denying the writ must, therefore, be affirmed.

Affirmed.

*Hall, Lee, Kyle* and *Holmes, JJ.*, concur.